UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

HEATHER MARIE BATES,

                              Plaintiff,

                                                                      <u>DECISION AND ORDER</u>

                                                                         15-CV-6416L

                    v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                              Defendant.
_____

      Plaintiff appeals from a denial of supplemental security income benefits by the Commissioner of Social Security ("the Commissioner"). The action is one brought pursuant to 42 U.S.C. § 405(g) to review the Commissioner's final determination.

      On May 3, 2012, plaintiff, then thirty-five years old, filed an application for Supplemental Security Income benefits under Title II of the Social Security Act. Plaintiff alleged an inability to work since August 26, 2009. (Administrative Transcript ("T."), Dkt. #8 at 24). Her application was initially denied. Plaintiff requested a hearing, which was held via video conference on September 26, 2013 before Administrative Law Judge ("ALJ") Michael J. Stacchini. The ALJ issued a decision on November 22, 2013, concluding that plaintiff was not disabled under the Social Security Act. (T. 23-33). That decision became the final decision of the Commissioner when the Appeals Council denied review on May 19, 2015. (T. 1-3). Plaintiff

now appeals from that decision. The plaintiff has moved (Dkt. #11), and the Commissioner has cross moved (Dkt. #14) for judgment on the pleadings pursuant to Fed. R. Civ. Proc. 12(c). For the reasons set forth below, the plaintiff's motion is granted in part, the Commissioner's cross motion is denied, and the matter is remanded for further proceedings.

## DISCUSSION

Determination of whether a claimant is disabled within the meaning of the Social Security Act requires a five-step sequential evaluation. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). *See* 20 CFR §§404.1509, 404.1520. If the ALJ concludes that the claimant is not engaged in substantial gainful employment and suffers from a severe impairment, the ALJ examines whether the claimant's impairment meets or equals the criteria of those listed in Appendix 1 of Subpart P of Regulation No. 4. If the impairment does so, and has continued for the required duration, the claimant is disabled. If not, analysis proceeds and the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 CFR §404.1520(e), (f). If the claimant's RFC permits her to perform relevant jobs she has done in the past, she is not disabled. If not, analysis proceeds to the final step, and the burden shifts to the Commissioner to show that the claimant is not disabled, by presenting evidence demonstrating that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir.1999) (quoting *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir.1986)). *See also* 20 CFR §404.1560(c).

The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). "The Court carefully considers the whole record, examining evidence from both sides 'because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" *Tejada v. Apfel,* 167 F.3d 770, 774 (2d Cir. 1998) (quoting *Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir.1997)). Still, "it is not the function of a reviewing court to decide *de novo* whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute our judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

The ALJ summarized plaintiff's medical records, particularly with respect to her depression, anxiety, attention deficit hyperactivity disorder ("ADHD"), irritable bowel syndrome, gastroesophageal reflux disease ("GERD"), Type II diabetes, and allergic rhinitis, which he concluded together constituted a severe impairment not meeting or equaling a listed impairment. I believe the evidence supports the ALJ's findings concerning plaintiff's exertional limitations, but that the ALJ failed to apply the correct legal standards in determining the extent of plaintiff's non-exertional limitations.

I.      **Plaintiff's Exertional Limitations**

In determining plaintiff's RFC, the ALJ considered the medical record and determined that plaintiff retained the residual functional capacity to perform the exertional requirements of medium work except with only frequent climbing of ramps or stairs and no climbing of ladders, ropers or scaffolds, avoidance of concentrated exposure to respiratory irritants, no exposure to unprotected heights and ready access to restroom facilities. Plaintiff does not challenge the ALJ's determination of her exertional limitations, and I find that it is supported by substantial evidence.

II.     **Plaintiff's Non-exertional Limitations**

Plaintiff also alleges that the ALJ failed to afford controlling weight to the opinions of her treating family practitioner, Dr. Robert J. Whelpley, and treating psychiatrist, Dr. Mary Nobilski.

It is well-settled that "the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). *See* 20 C.F.R. § 404.1527(d)(2). In determining the weight to which a treating physician's opinion is entitled, the Commissioner must consider: (1) the length, nature and extent of the treatment relationship; (2) the frequency of examination; (3) the evidence supporting the treating physician's opinion; (4) whether the opinion is consistent with the record as whole; and (5) whether the opinion is rendered by a specialist in a relevant field(s). 20 C.F.R. § 404.1527(d). Further, the ALJ must have clearly articulated his reasons for assigning the level of weight he assigns to a treating physician's opinion. *Shaw*, 221 F.3d at 134; *see also Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). "Because mental disabilities are difficult to diagnose without subjective, in-person

examination, the treating physician rule is particularly important in the context of mental health." *Roman v. Astrue*, 2012 U.S. Dist. LEXIS 146567 at \*56 (E.D.N.Y. 2012).

When it comes to nonexertional limitations, in addition to the usual five-step analysis, the regulations "require application of a 'special technique' at the second and third steps of the five-step framework." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). If the claimant is found to have a medically determinable mental impairment, the ALJ must assess the claimant's degree of resulting limitations in four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation. 20 CFR §404.1520a(c)(3). If and how the analysis proceeds from that point depends upon the degree of impairment found. However, the ALJ must document his analysis, and his written decision must "reflect application of the technique, and . . . 'include a specific finding as to the degree of limitation in each of the [four] functional areas.'" *Kohler*, 546 F.3d 260 at 266, *quoting* 20 CFR §404.1520a(e)(2).

Here, the ALJ found that the plaintiff's non-exertional limitations consisted of being off task for up to 50% of the work period, taking regularly scheduled breaks, performing only simple, routine tasks with low stress, occasional decision-making, occasional changes in the work place, and occasional interaction with coworkers and the general public. (T. 27). In so finding, the ALJ rejected the assessments of plaintiff's treating family practitioner Dr. Whelpley, who had opined that plaintiff had moderate impairments in social functioning and marked impairments with respect to concentration, persistence or pace, caused by plaintiff's depression and anxiety (T. 417-419), and plaintiff's treating psychiatrist of at least three years, Dr. Nobilski, who had opined that plaintiff had moderate to marked restrictions in social functioning, and moderate to marked restrictions in concentration, persistence or pace, with a likelihood that the

demands of even unskilled work would exacerbate plaintiff's impairments. (T. 532-33). (The forms used by plaintiff's treating physicians did not request any specific opinions as to plaintiff's activities of daily living or episodes of decompensation.) In opting not to give controlling weight to their opinions, the ALJ found that Dr. Whelpley's and Dr. Nobilski's opinions were "inconsistent with the claimant's acknowledged activities of daily living, the contemporaneous objective medical records as noted above . . . as well as improvement with [sic] conservative treatment regimen." (T. at 30). The ALJ did not make specific reference to any of the "inconsistent" evidence of record, however, nor was there any discussion in his decision of "objective medical records" concerning plaintiff's mental health, so the Court has undertaken a review of the record as a whole.

I find that the ALJ's characterization of plaintiff's treatment records and activities of daily living is not supported by the record, and that the ALJ thus failed to provide sufficient reasons for rejecting the opinions of plaintiff's treating physicians concerning her mental RFC. First, their assessments do not appear to be inconsistent with plaintiff's activities of daily living and contemporaneous medical records. Progress notes concerning plaintiff's mental health care providers note that she is "so depressed that she is unable to work or even clean her house at times" (T. 385), that despite "years of therapy" she is not "able to process effectively [and] is triggered every day" concerning prior abuse (T. 386), was observed to be crying when her physician entered the room and has "failed multiple antidepressants" (T. 432) due to inability to tolerate them without stomach upset, is unable to "finish what she starts" due to attention problems (T. 469), reports "difficulty concentrating, poor focus, and . . . difficulty completing tasks" (T. 489), has "become so depressed believing that [her] strength and energy would never return" due to her physical ailments (T. 546), and is "lethargic without any energy or motivation"

(T. 559).  *See generally Khan v. Astrue*, 2013 U.S. Dist. LEXIS 106950 at *60 (E.D.N.Y. 2013) (self-reported symptoms are an appropriate basis and even an "essential diagnostic tool" for determinations concerning mental impairments).  Plaintiff's medical records do not appear to note any appreciable improvement in her condition, despite psychiatric treatment, except for a brief period when plaintiff was able to tolerate anti-depression medications.

Nor do plaintiff's activities of daily living appear to conflict with her treating physician's and psychiatrist's opinions.  At the hearing, plaintiff testified that she gets panicky and nervous when out in public.  Other than grocery shopping, she spends almost all of her time at home, where she performs a "bare minimum" of housework.  (T. 107-113).  She has no friends and her relationships with immediate family members are troubled.  She cries daily for at least half an hour (T. 114), and (as confirmed by her medical records) has been unable to tolerate medications for depression, due to ongoing gastric distress.  Plaintiff also has bowel issues which also cause her to have to make extended, urgent visits to the restroom with little forewarning, which exacerbates her anxiety about leaving home.  (T. 108-15).  Plaintiff's hearing testimony concerning her daily activities (or lack thereof) is consistent with her statements to her treating physician and psychiatrist throughout her treatment history.  *See e.g.*, T. 385 ("[c]lient reported that she is so depressed that she is unable to work or even clean her house at times"); T. 393 (client has "no current relationships"); T. 432 ("[plaintiff] does her shopping and her mom does the rest . . . [h]er mom does her housework because she's too tired to do her own cleaning.  She spends her day watching television and reading.  She can do her self-care.  She has no friends and her fiancé left her 3 years ago because of her depression . . . [s]he was crying when I walked into the room").

Thus, while the ALJ's findings as to plaintiff's exertional limitations are well-supported by substantial evidence of record, the ALJ failed to provide a sufficiently specific or accurate explanation for rejecting the opinions of plaintiff's treating sources with regard to her nonexertional limitations.

While I find that the ALJ failed to sufficiently support his decision not to grant controlling weight to the opinions of Dr. Whelpley and Dr. Nobilski, the record is not clear concerning whether there are jobs in the national economy that plaintiff can perform, as neither the ALJ nor plaintiff's counsel asked questions of the vocational expert that accurately incorporated the assessments by her treating physicians.  At plaintiff's hearing, plaintiff's attorney asked vocational expert Amy Leopold whether there was work in the national economy for an individual whose limitations included the ability to do the following things for only five, 5-10 minute durations in an eight-hour workday: maintain attention and concentration, complete a normal workday or workweek, get along with coworkers or peers without distracting them, respond appropriately to unexpected changes, and set realistic goals.  (T. 125-29).  While Ms. Leopold replied that such an individual could not work, the question she was asked posited a greater and more specific extent of limitation than was indicated by either Dr. Whelpley's or Dr. Nobilski's reports.  *See e.g.*, T. 532-33 (Dr. Nobilski's report, indicating that plaintiff may be engaged in certain activities requiring maintenance of attention and concentration, and social interaction, for periods of 5-15 minutes, totaling 2 hours in an eight-hour workday); T. 417-19 (Dr. Whelpley's report, indicating that plaintiff has "more than a slight limitation" in abilities relative to attention and concentration, and a "serious limitation . . . substantial loss in the ability to effectively function" with respect to social interactions).

As such, it cannot be determined, upon the present record, whether there are jobs existing in significant numbers in the national economy that plaintiff can perform, and the matter must be remanded for further proceedings, including but not limited to the gathering of more specific opinions and/or additional treatment records from plaintiff's treating physicians concerning her mental RFC, if appropriate, and additional testimony by a vocational expert.

## CONCLUSION

For the forgoing reasons, I find that the ALJ committed legal error when he determined the weight to be given to the opinions of plaintiff's treating physician, Dr. Robert Whelpley, and plaintiff's treating psychiatrist, Dr. Mary Nobilski.  The plaintiff's motion for judgment on the pleadings (Dkt. #11) is granted in part, the Commissioner's cross motion for judgment on the pleadings (Dkt. #14) is denied, and the matter is remanded for further proceedings consistent with this opinion.  The Clerk of Court is directed to close the case.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
November 14, 2016.